UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| KYLE ACTON, | No. 2:19-cv-00904 CKD |
|---|---|
| Plaintiff, | |
| v. | ORDER & |
| ANDREW SAUL, Commissioner of Social Security, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") finding that his disability ended on July 11, 2016 under section 1614(a)(3)(A) of the Social Security Act ("Act"). For the reasons discussed below, the court will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

Plaintiff, born in 1988, was found disabled beginning on June 7, 2011.[1] Administrative

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20

1

Transcript ("AT") 15, 22.  The March 29, 2013 decision finding plaintiff disabled stated that he had recurrent major depressive disorder, anxiety disorder, borderline intellectual functioning, and cannabis abuse in reported remission by the claimant.  AT 16-17.

Pursuant to a continuing disability review ("CDR"), the Commissioner found that plaintiff was no longer disabled as of July 11, 2016.[2]  This determination was upheld upon reconsideration after a disability hearing by a State agency disability hearing officer.  AT 15.  Plaintiff then requested and appeared for a hearing before an ALJ on November 28, 2017.  AT 15.  In a decision dated May 10, 2018, the ALJ determined that plaintiff was not disabled since July 11, 2016.  AT 15-23.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

---

C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

[2] See 20 C.F.R. § 404.1594 (explaining that the agency must evaluate recipients of SSI benefits from time to time to determine their continuing eligibility for benefits).

2

1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated March 29, 2013. This is known as the 'comparison point decision' or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: recurrent major depressive disorder, anxiety disorder, NOS; borderline intellectual functioning and cannabis abuse reported in remission by the claimant. His depressive disorder met section(s) 12.04 (Depressive, bipolar and related disorders) of 20 CFR Part 404, Appendix 1 (20 CFR 416.9920(d)).

3. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through July 11, 2016. Thus, the claimant's current impairments are the same as the CPD impairments.

4. Since July 11, 2016, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Medical improvement occurred on July 11, 2016.

6. The medical improvement is related to the ability to work because, by July 11, 2016, the claimant no longer had an impairment or combination of impairments that met or medically equaled the same listing(s) that was met at the time of the CPD.

7. Since July 11, 2016, the claimant's mental impairments have continued to be severe.

8. After careful consideration of the entire record, I find that, beginning on July 11, 2016, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to understanding, remembering, and carrying out 1 to 2-step oral and written instructions. He is limited to performing routine, repetitive tasks. He is limited to exercising only simple work-related judgments and decisions. He is limited to no more than occasional changes to the routine work setting. He is limited to no interactions with members of the public. He is limited to no more than occasional interactions with coworkers and supervisors.

9. The claimant has no past relevant work.

10. On July 11, 2016, the claimant was a younger individual 18-49.

11. The claimant has at least a high-school education and is able to communicate in English.

12. Transferability of job skills is not an issue because the claimant does not have past relevant work.

13. Since July 11, 2016, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to form a significant number of jobs in the national

economy.

15. The claimant's disability ended on July 11, 2016, and the claimant has not become disabled again since that date.

AT 16-23.

ISSUES PRESENTED

Plaintiff contends that the ALJ erred in finding medical improvement related to plaintiff's ability to work. Specifically, plaintiff argues that the ALJ disregarded evidence of persistent social isolation and anxiety that impacted plaintiff's ability to work.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

////

////

ANALYSIS

Plaintiff asserts that, while he no longer meets Listing 12.04 for depression, his recurrent anxiety symptoms and avoidance of social contact preclude working. Plaintiff argues that substantial evidence does not support the ALJ's finding that medical improvement occurred and that such improvement was related to plaintiff's ability to work. See § 404.1594.(a).

When the agency reviews a claimant's continuing entitlement to benefits, it "must determine if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [her] ability to work." 20 C.F.R. §§ 404.1594.(b)(1), (b)(7). "Medical improvement" is defined as

> any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled.... A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [claimant's] impairment(s).

20 C.F.R. § 416.994a(c). "In other words, the key question is not whether the claimant still suffered from the same medical problem he had when benefits were awarded, but whether the severity of the problem had decreased sufficiently to enable him to engage in gainful activity." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).

Here, the ALJ found plaintiff's anxiety and other mental impairments continued to be severe. AT 19. However, the ALJ continued, "The medical evidence supports a finding that, by July 11, 2016, there had been a decrease in the medical severity of the impairments." AT 19.

The ALJ's decision cited the following evidence of improvement:

> His Kaiser record shows that on March 2, 2016, he was seen by a psychiatrist, for a medication follow up. The claimant reported that he was 'good.' He reported that his anxiety symptoms had been stable. He noted that he had not been taking his medication as recommended. He forgot to take his medication regularly. He could not recall the last time he took Prozac.[3]

---

[3] Citing AT 144 (noting March 2016 examination findings of normal mood, affect, thought process, attention, concentration, memory, knowledge, insight, and judgment; "minimal symptoms").

> There is a mental health telephone note with a nurse from Kaiser on April 6, 2016. The claimant stated the medication was working well and he was doing fine.[4]

AT 19.

When State agency consultant Dr. V. Meenakshi conducted a psychiatric review in November 2016, he opined that plaintiff had no severe mental impairments and had mild restrictions in activities of daily living, social functioning, and concentration, persistence, or pace. AT 451-461. Dr. Meenakshi's report noted that "currently claimant has very minimal treatment" and normal mental status examinations, despite evidencing "low-grade depression, isolation, [and being] socially awkward." AT 461. The ALJ gave little weight to this opinion, finding plaintiff's anxiety to be a severe impairment. AT 21.

Rather, the ALJ accorded substantial weight to the opinion of consultative examiner Dr. Wendy McCray, who conducted a mental status examination of plaintiff in October 2016. AT 21, citing 437-440. Dr. McCray noted plaintiff's complaints of anxiety, but opined that his ability to maintain attention and concentration for simple one- and two-step tasks appeared unimpaired. AT 439. The ALJ incorporated Dr. McCray's assessment into the RFC. AT 21.

As to plaintiff's self-reported symptoms, the ALJ cited a March 2016 Function Report in which "he alleged that his functioning depended on his anxiety. . . . Due to depression and anxiety, he was no longer involved in any outside activity." AT 20, citing AT 266-274. The ALJ continued:

> Plaintiff testified that he cannot work because of his anxiety and depression which prevent him from working full time.[5] He has no work history. He has not participated in any manner of testing or training through the California Department of Rehabilitation to see if he could work. He has not sought employment.
>
> In May of 2017, he was seeking services to address his depression and anxiety. He had less concern for his depression as his social anxiety [sic]. However, he was not interested in Psychotherapy at the time. Also in May of 2017, he had no interest in groups to

---

[4] Citing AT 144.

[5] Citing AT 33-34 (hearing testimony).

> develop skills for anxiety.[6] . . . In October 2017, . . . [i]t was noted that his compliance with the treatment plan had been poor. He refused medication to manage his symptoms, and he declined all groups and classes. He had been consistent in attendance with appointments. No further intervention was recommended.
>
> The claimant reports having a problem with social anxiety more than depression but he is not interested in having any type of therapy. He is not compliant with his treatment plan.

AT 21.

In an unchallenged finding, the ALJ concluded that plaintiff was less than fully credible about intensity, persistence, and limiting effects of his mental symptoms. AT 20. "Accordingly, [plaintiff's statements about his anxiety] have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence," the ALJ concluded. AT 20. As set forth above, the record in 2016 included evidence that plaintiff's mental symptoms had improved, with plaintiff at times reporting he was doing well and other times reporting debilitating anxiety. See AT 424-425 (June 2016 medical exam notes that plaintiff had "no trouble accomplishing his activities of daily living" and was alert and cooperative with normal affect and no indication of mental impairment); AT 438 (in October 2016 psychological exam, plaintiff reported he was "able to independently complete all activities of self-care, do his own laundry, prepare meals, assist with household chores, drive, and go places independently"; he enjoyed "going to heavy metal concerts either with his father or by himself"). Moreover, the ALJ's decision repeatedly noted plaintiff's noncompliance with his mental health treatment plan and his lack of interest in seeking treatment, suggesting the potential for even more improvement of plaintiff's symptoms if he followed medical advice.

Given this mixed record of mental symptoms, the RFC limited plaintiff to "no more than occasional changes to the routine work setting . . . no interaction with members of the public[,] ... and no more than occasional interactions with co-workers and supervisors." AT 19. Plaintiff has not shown why the evidence warrants a more limited mental RFC. While there is evidence that plaintiff preferred to self-isolate, i.e., stay home and play video games rather than interact with

---

[6] Citing AT 484-486.

non-family members or take on outside responsibilities[7], an individual's RFC reflects what he can do despite his limitations, not what he prefers to do. 20 C.F.R. §§ 404.1545(a), 416.945.  The undersigned concludes that substantial evidence supports the ALJ's determination that, as of July 2016, the severity of plaintiff's mental symptoms had decreased sufficiently to enable him to engage in work.

CONCLUSION

   IT IS HEREBY ORDERED that the Clerk of Court assign a district judge to this action.

   For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT:

   1. Plaintiff's motion for summary judgment (ECF No. 12) be denied;

   2. The Commissioner's cross-motion for summary judgment (ECF No. 13) be granted; and

   3. Judgment be entered for the Commissioner.

   These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 15, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/acton0904.ssi.ckd

---

[7] See, e.g., AT 407, 434, 485.

8